1  Scott Kalkin, State Bar No. 120791
2  William Reilly, State Bar No. 177550
   **ROBOOSTOFF & KALKIN**
3  A Professional Law Corporation
4  369 Pine Street, Suite 820
   San Francisco, California 94104
5  (415) 732-0282

7  Attorney for Plaintiff Stephanie Owens

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stephanie Owens, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:22-cv-05801-VC |
| ) | |
| vs. ) | COMPLAINT |
| ) | |
| BLUE SHIELD of California; The ) | |
| Frederickson Partners Group Health ) | |
| Plan; The Arthur J. Gallagher & Co. ) | |
| Health Plan; Valerie Fredrickson and ) | |
| Company dba Fredrickson Partners ) | |
| and The Arthur J. Gallagher & Co., ) | |
| ) | |
| Defendants. ) | |

COMPLAINT

## INTRODUCTION

This case is about Defendants' decisions and actions to *retroactively* eliminate Plaintiff's Cal COBRA benefits without notice in the midst of her radiation treatments for cancer, after she had paid all of her premiums for the relevant time period.  Defendant Blue Shield was well aware of its actions, as it had pre-approved the radiation treatment program a week before terminating her coverage to a point in time three months earlier.   This not only left Plaintiff with no insurance coverage going forward, nor time to put new coverage in place, it also created a retroactive three-month gap in coverage while she was fighting for her life.

Of course, Plaintiff had no choice but to continue the radiation treatments for her cancer, resulting in a near five-figure series of medical bills that the medical facility, while waiting patiently for Defendants to do the right thing, has indicated it is prepared to send to collection.  Months of effort by Plaintiff and her attorneys to deal with Defendants' representatives have resulted in nothing more than procedural roadblocks, excuses, finger pointing, and incoherent and conflicting responses.

Defendants' callous and reckless handling of Plaintiff's insurance benefits under the applicable health plans and her rights under the law not only breached their fiduciary obligations, but defy basic common human decency that any organization would treat its insured cancer patient in this manner.

## BACKGROUND FACTS

1. Plaintiff, Stephanie Owens, is a former employee of Defendant Valerie Fredrickson and Company dba Fredrickson Partners ("Fredrickson"), which subsequently merged with Defendant The Arthur J. Gallagher & Co. ("Gallagher").

2. Frederickson offered health and other benefits to its employees through the The Frederickson Partners Group Health Plan, which was insured by Blue Shield of California ("BLUE SHIELD").

3. Gallagher offered health and other benefits to its employees through the The Arthur J. Gallagher & Co. Group Health Plan

4. As Ms. Owens' employment ended on March 12, 2020, her health insurance benefits ceased on March 31, 2020, subject to her right to continue her health insurance under various programs, including Cal COBRA.

5. By letters dated March 31, 2020 and April 9, 2020, BLUE SHIELD notified Ms. Owens of her rights to continue coverage since her termination constituted a qualifying event, making her eligible to receive benefits under Cal COBRA. (See Ex. 1.)

6. On April 27, 2020, within the election period, Ms. Owens submitted her Cal COBRA election form to BLUE SHIELD. (See Ex. 1.)

7. For the next two and a half years, Ms. Owens paid monthly premiums to BLUE SHIELD and received her Cal COBRA benefits (which were supposed to run through March 31, 2023) without issue.

8. In the Summer of 2022, Ms. Owens was unfortunately diagnosed with throat cancer. Her medical advisors scheduled her for surgery in late September 2022, with scheduled in-patient recuperation thereafter. Ms. Owens' operation, although painful and her recovery complicated and extended, appeared successful.

9. In follow up visits and tests following her surgery, her medical team found cancerous cells in her lymph nodes. The team immediately prescribed a radiation treatment program to eliminate this cancer in order to prevent it spreading to other parts of her body. BLUE SHIELD was promptly notified of this radiation treatment, and pre-approval was sought and received from BLUE SHIELD by letter dated December 9, 2022. (See. Ex. 2).

10. Ms. Owens then underwent an intense multi-week, multi-days/week radiation treatment, experiencing all the miserable side effects this process brings with it. Her final radiation treatment was on January 20, 2023. While it appears Ms. Owens is now cancer-free, she continues to experience symptoms which include little or no appetite, dramatic weight loss, extremely low energy and inability to function in daily activities, and other conditions which her doctors are attempting to diagnose and treat.

11. Unbeknownst to Ms. Owens, who had not worked for Fredrickson for more than two years when she was diagnosed with throat cancer, Fredrickson was acquired by Gallagher & Co. in May 2022. Gallagher is not a California-based company and apparently has its own health insurance program.

12. Ms. Owens was informed in December 2022 that in June 2022, Fredrickson advised BLUE SHIELD to cancel BLUE SHIELD insurance coverage effective July 1, 2022, since Fredrickson employees were now insured by Gallagher effective that date.

13. Neither Gallagher, Fredrickson nor BLUE SHIELD notified Ms. Owens that Fredrickson was attempting to terminate her coverage only a few weeks after their June 2022 request to BLUE SHIELD, on July 1, rather than on March 31, 2023 when her Cal COBRA benefits ran out.

14. Apparently BLUE SHIELD failed to terminate Fredrickson's coverage on July 1. Presumably following several more months of insurance premium billings and payments to BLUE SHIELD, Fredrickson, in December 2022, again attempted to terminate BLUE SHIELD health insurance coverage, retroactive to July 1, 2022. Ms. Owens was not aware of any of this.

15. In the midst of her BLUE SHIELD pre-approved radiation treatment, BLUE SHIELD retroactively terminated Ms. Owens' coverage by letter dated December 15, 2022. In big, bold letters, the letter states **NOTICE OF END OF**

3
COMPLAINT

**COVERAGE.** (Ex. 3.) The letter stated that the "coverage has been cancelled effective 10/01/22." Ms. Owens received this letter on December 20, 2022, and it provided absolutely no reason why coverage was being terminated effective nearly three months earlier.

16. Once the improper retroactive cancellation of coverage was brought to Defendants' attentions, their first responses were as follows:
   a. Gallagher responded, essentially, "she was never employed by us, not our problem."
   b. Frederickson responded, essentially, "we never knew she elected Cal Cobra, BLUE SHIELD was handling that; not our problem".
   c. And shortly thereafter, when Plaintiff appealed BLUE SHIELD's retroactive termination, BLUE SHIELD essentially responded (before even giving Plaintiff a chance to state the basis of her appeal): "your employer terminated the plan and your coverage, talk to them. Not our problem."

17. After Plaintiff wrote a letter to BLUE SHIELD laying all of this out, copying Fredrickson and Gallagher, the following occurred:
   a. Fredrickson/Gallagher completely ignored the letter.
   b. BLUE SHIELD responded nonsensically and attempted to justify the denial of Plaintiff's appeal, essentially claiming that it could not honor Plaintiff's request for retroactive termination because it's not allowed under the plan, which was the very reason that Plaintiff argued her appeal should be granted.

18. No one, not BLUE SHIELD, nor her prior employer, nor the company that acquired her prior employer, provided any warning that coverage for her cancer treatment was about to be terminated, much less three months retroactively, while she was in middle of that treatment.

19. Of course, it was not possible to secure retroactive medical insurance coverage, or even prospective medical insurance until at least some period of time after one learns it is necessary to do so. In this case, Brian and Stephanie Owens

were able to secure insurance coverage for Stephanie Owens effective February 1, 2023, the earliest conceivable date they could do so.  Ms. Owens' radiation treatment ended as scheduled on January 20, 2023, before her new health insurance took effect.

20.   The above December 15, 2022 "notice of end of coverage" not only came out of the blue, it came at THE most critical time in Ms. Owens' cancer treatment.  All told, Ms. Owens has been billed $89,573.48 for pre-approved treatments, some of which occurred before the notice of the retroactive cancellation.  The medical facility, which appeared to be as shocked by BLUE SHIELD's conduct as anyone, has done what it is able to do to provide Ms. Owens with the time necessary to remedy this situation with BLUE SHIELD.  However, that grace period has ended, and Ms. Owens has been advised that this matter will be turned over to collection if BLUE SHIELD continues to refuse to honor its obligations to cover Ms. Owens for this treatment.

21.   As a result of Defendants' breaches of their obligations, Plaintiff and, based upon information and belief, other employees continued to participate in the Plan and pay additional premiums.  Plaintiff and, based upon information and belief, other employees also continued to seek covered medical care for which Defendants caused Plaintiff and other employees to reasonably believe that would be paid.  Consequently, Plaintiff and, based upon information and belief, other employees have received collections notices from their doctors and other providers for amounts owed by the Plan for covered health benefits.  Frederickson does not contend that the unpaid amounts are not owed, or that the benefits at issue were not covered, leaving Frederickson former employees exposed to substantial financial liability.  This conduct constitutes breaches of fiduciary.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction under 29 U.S.C. § 1132(e)(1).

23. The Court has personal jurisdiction over all defendants named herein, as all reside and/or do business in California and this District or otherwise have sufficient contacts with the forum, as detailed below.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e), as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, the Plan is administered in this District and/or a defendant resides or may be found within this District.

## THE PARTIES

25. Plaintiff Stephanie Owens is a former employee of Frederickson, and was a participant in the Plan. Ms. Owens is currently a resident of Florida. Ms. Owens is a Plan participant within the meaning of 29 U.S.C. § 1002(7).

26. Frederickson is a California company with its principal place of business in Menlo Park, California. Frederickson is the Plan Administrator for the Plan and is therefore a fiduciary with respect to the Plan under ERISA.

27. Gallagher is a company doing business in California with its principal place of business in Rolling Meadows, Illinois. Gallagher is the Plan Administrator for the Plan and is therefore a fiduciary with respect to the Plan under ERISA.

## GENERAL ALLEGATIONS
### The Employee Health Benefits Plans

28. Frederickson offered health and other benefits to its employees, including Plaintiff Stephanie Owens, through its Frederickson Group Health Plan (the "Plan"). The Plan is an employee benefit plan within the meaning of Section

2(3) of ERISA, 29 U.S.C. §1002(3).

29. Gallagher offered health and other benefits to its employees, through its Gallagher Group Health Plan (the "Plan"). The Plan is an employee benefit plan within the meaning of Section 2(3) of ERISA, 29 U.S.C. §1002(3).

30. On information and belief, the Plans documents specifically identify Frederickson and Gallagher as the Plan sponsor and Named Fiduciary.

31. BLUE SHIELD was the claims administrator for the Plan.

32. As the claims administrator, BLUE SHIELD was responsible for processing claims for health benefits, determining whether claims were covered under the Plan, making payments, and informing Plan participants about the disposition of their claims, including whether or not they were covered and whether or not the Plan had paid benefits accordingly.

33. Defendants did not notify Plan participants that Frederickson had cancelled the Plan, much less retroactively. Plaintiff is informed and believes and thereon alleges that Defendants failed to take any reasonable steps to ensure that Plan participants were notified that Frederickson cancelled the Plan. Defendants likewise failed to take any reasonable steps to notify Plan participants of the inevitable consequences of Frederickson cancellation the Plan. (i.e., that Plan would ultimately be unable to meet its obligations).

34. Plaintiff is informed and believes and thereon alleges that as of October 1, 2022 Defendants ceased making any payments for covered claims under the Plan. BLUE SHIELD, however, continued to receive and deposit regular premium payments, identifying them as funds for the Plan. Consequently, Plaintiff and , based upon information and belief, other employees continued to seek medical care and services with the expectation that the costs of such care and services would be covered and paid for as provided by the Plan.

35. As a result of Defendants' breaches of their fiduciary duties and other conduct described herein, Defendants have failed to pay substantial covered medical claims under the Plan. Defendants do not dispute or deny that these claims are covered by the Plan. They simply have failed and refused to pay these covered claims, taking the position that they retroactively terminated coverage without notice to Ms. Owens.

36. As a result, Plaintiff and, based upon information and belief, other employees have received collections and/or past-due notices from multiple medical providers.

37. Plaintiff is informed and believes and thereon alleges that as of February 1, 2023, covered claims in the amount of $89,573.48 for pre-approved treatments were unpaid. That amount has continued to grow, as covered claims continue to go unpaid. Plaintiff and other employees are informed and believe and thereon allege that Defendants' failure to pay covered claims is ongoing, and thus the harm to Plaintiff and other Plan participants is continuing and increasing by the day.

### Defendants Failed to Notify Plan Participants of Their Failure to Pay Claims, Leaving Them Vulnerable to Further Financial Liability and Medical Insecurity

38. Plaintiff is informed and believes and thereon alleges that some Frederickson employees may remain unaware of Defendants' conduct. For example, any Plan participants who have not sought medical care or treatment in the time since Defendants retroactively canceled the Plan, would have no basis to know that Defendants have breached their fiduciary duties and stopped making payments for covered health benefits under the Plan and many of whom that did would also have no basis to know because BLUE SHIELD misrepresented to them

that their coverage continued in full and/or their medical providers have not yet sought payment from the employees.

### In Addition To Its Direct Fiduciary Liability, Defendants are Jointly and Severally Liable for all Fiduciary Breaches of any Other Defendant(s)

39. In addition to direct liability for fiduciary breaches, ERISA imposes on all fiduciaries responsibility for breaches of co-fiduciaries.

40. Section 405(a) of ERISA provides:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C.A. § 1105(a).

41. Plaintiff is informed and believes and thereon alleges that all Defendants were aware of Frederickson's retroactive cancellation of the Plan, its failure to pay claims when due and other fiduciary breaches as alleged above. No Defendant made any effort to remedy those breaches. By failing to provide Plan participants any notification of these breaches and the financial and medical risk to which the breaches subjected Plan participants, Defendants knowingly undertook to conceal the breaches and their inevitable consequences for Plaintiff and other Plan participants.

42. The conduct of Defendants does not appear based on individual eligibility requirements or decisions, but on policy and construction of law, and it is expected through discovery it is likely that the conduct by which Plaintiff was victimized and the policies applied as to Plaintiff as pleaded herein, are were applied to other plan participants, all resulting in like harm to others and requiring relief to more than the instant Plaintiff, all as contemplated by the allowance of "other relief" in 29 U.S.C. §1132(c)(1).

### FIRST CLAIM FOR RELIEF

(Claim for Plan Benefits Against All Defendants - Pursuant to ERISA  502(a) (1) (B); [29 U.S.C.  1132(a)(1)(B)].)

43. Plaintiff incorporates and re-pleads by this reference the allegations of paragraphs 1 through 42 of this complaint.

44. ERISA  502(a) (1) (B) (29 U.S.C.  1132 (a) (1) (B)), permits a participant in a plan to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or clarify her rights to future benefits under the terms of a plan.

45. By, *inter alia*, failing to pay Plaintiff health benefits despite her complying with the Plan's pre-approval and other requirements; failing to provide a full and fair review of the claim and the adverse benefit determination; failing to provide a review that takes into account all comments, documents, records, and other information; refusing to provide Plaintiff with documentation which substantiated its decision to retroactively pre-approved benefits; and failing to produce documents to which Plaintiff was entitled pursuant to ERISA and the applicable Department of Labor Regulations, Defendants have violated, and continue to violate, the terms of the Plan and Plaintiff's rights thereunder.

## SECOND CLAIM FOR RELIEF

## Breach of Fiduciary Duty Against All Defendants

## (ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2))

46. Plaintiff incorporates and re-pleads by this reference the allegations of paragraphs 1 through 45, as though fully set forth herein.

47. The Plan documents identify Frederickson as the Plan Administrator and the Plan's Named Fiduciary. In addition, BLUE SHIELD and Gallagher were responsible for making and did make discretionary decisions regarding, among other things, Plan administration, and the disbursement of Plan benefits and Plan assets. Frederickson, BLUE SHIELD and Gallagher also had and exercised control over Plan assets. Accordingly, Frederickson, BLUE SHIELD and Gallagher are and acted as fiduciaries of the Plan.

48. As fiduciaries of the Plan, Frederickson, BLUE SHIELD and Gallagher had the duties set forth in in ERISA section 404, 29 U.S.C. § 1104, including but not limited to a duty of loyalty to the Plan and Plan participants, as well as duties not to make misrepresentations to Plan participants; to discharge their duties solely in the interests of Plan participants and their beneficiaries and for the exclusive purpose of providing benefits to them or defraying reasonable expenses of administering the Plan; to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity would use in the conduct of an enterprise of a like character and with like aims; and to discharge their duties in accordance with the documents and instruments governing the Plan.

49. Defendants breached their fiduciary duties by, among other things:

    a. failing to pay covered claims under the Plan;

    b. failing to ensure that Plan assets were prudently managed;

    c. misappropriating and misusing Plan assets; and

      d.    failing to notify Plan participants that Defendants had ceased paying covered claims and had terminated coverage retroactively.

50. As a result of such breaches, Defendants have caused monetary loss to Plaintiff, other employees and the Plan for which Defendants are individually liable.

## SECOND CLAIM FOR RELIEF

### Co-Fiduciary Liability Against All Defendants

### (ERISA Section 405, 29 U.S.C. § 1105)

51. Plaintiff incorporates and re-pleads by this reference the allegations of paragraphs 1 through 50, as though fully set forth herein.

52. Defendants knowingly participated in, undertook to conceal, enabled and failed to make reasonable efforts to remedy the fiduciary breaches.

53. Consequently, Defendants jointly and severally liable for all monetary loss and other harm caused by their co-fiduciaries' breaches of fiduciary duty with respect to the Plan.

## THIRD CLAIM FOR RELIEF

### For Appropriate Equitable Relief Against All Defendants

### (ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3))

54. Plaintiff incorporates and re-pleads by this reference the allegations of paragraphs 1 through 53, as though fully set forth herein.

55. Plaintiff is entitled to appropriate equitable relief to ensure the protection of her rights going forward and prevent unjust enrichment of Defendants by virtue of their conduct described above constituting breaches of fiduciary duties owed to Plan participants and/or knowing participation in such breaches.

56. In addition to the conduct described above, Plaintiff is entitled to appropriate equitable relief to redress Defendants' violations of, or knowing participation in violations of, ERISA's prohibition on transactions set forth in

ERISA Section 406(a), 29 U.S.C. § 1106(a), through, at a minimum, the transfer of Plan assets to, use of Plan assets by or for the benefit of parties in interest (as defined by ERISA).

## FOURTH CLAIM FOR RELIEF

For Penalties Under ERISA §502(a)(1)(A) [29 U.S.C. § 1132(a)(1)(A)]
Against BLUE SHIELD, Gallagher and Fredrickson

57. Plaintiff incorporates as though set forth in full the allegations contained in paragraphs 1 through 56 of this complaint.

58. ERISA section 502(C) and the related Department of Labor regulations provide in pertinent part that any administrator who fails or refuses to comply with a request for any information which such administrator is required to furnish to a participant within thirty (30) days of a request therefor may be liable to the participant for penalties of up to $110.00 per day from the date of such failure or refusal, as well as for such other relief as the Court deems proper.

59. On April 20, 2023 and at other times subsequent thereto, Plaintiff's counsel mailed BLUE SHIELD, the Plans, Gallagher, Fredrickson and/or their agents, who are the plan administrators, a request for plan documents and other documents plaintiff, as a plan participant, was entitled to.

60. The April 20, 2023 letter stated in relevant part:

In accordance with my client's rights under 29 U.S.C. section 1001, et seq., I hereby request that you produce the following documents:

1) a copy of the current, and all prior, Summary Plan Description(s) ("SPD's") relating to the Plans under which Ms. Owens is, or was, covered **since the inception of the plan(s)**;

2) copies of all "written instruments" (as that term is defined by 29 U.S.C. § 1102(a)) and/or other documents establishing and/or comprising the Plan(s) under which Ms. Owens is, or may be, covered. This should include, but not

be limited to, any contracts for insurance coverage, any insurance policies, certificates of insurance, and all amendments to those policies **since the inception of the plan(s)**;

3) all documents which evidence the Plan Administrator's grant of discretionary powers to Blue Shield, or any of its parent, subsidiary or related companies;

4) the <u>entire</u> claims file(s) in these matters, including, but not limited to, copies of **all** correspondence, memoranda, notes, or other materials in <u>each</u> of the Plan's or Blue Shield's files regarding my client's claims;

5) all rules, guidelines, protocols, or other similar criteria which were relied upon or consulted in making the decision to deny/ terminate my client's claims;

6) all documents, materials or other writings which were submitted, considered, or generated in the course of making the decision to deny/ terminate Ms. Owens' claims, **without regard to whether such document, record, or other information was relied upon in making the benefit determination(s)**;

7) any and all contracts or other documents under which my client's long term disability and life insurance plans have been established, operated or administered (see, *Hughes Salaried Retirees Action Committee v. Administrator of The Hughes Non-Bargaining Retirement Plan,* 72 F.3d 686 (9th Cir. 1995), where the court defined the universe of documents subject to disclosure under ERISA § 104(b)(4) as those "which describe the terms and conditions of the plan, as well as its administration and financial status");

8) any and all documents, or contracts between/ among the Plans and/or Frederickson Partners and/or Arthur J. Gallagher & Co. and/or Blue Shield or its parent or subsidiary companies, establishing or amending the Plan, and those establishing or setting forth any claims policies or procedures;

9) any and all documents setting forth all financial arrangements between/ among the Plans and/or Frederickson Partners and/or Arthur J. Gallagher & Co. and/or Blue Shield or its parent or subsidiary companies, (i.e., documents relating to payment of premiums, processing and/or monitoring

14
COMPLAINT

of plan claims, etc.).  (See, ERISA sections 104, 402, 404 and Dept. of Labor Opinion 97--11A.);

10) the name, current phone number and address of the Plan Administrator;

11)  a copy of the current annual report for the Plan, including, but not limited to, all documents filed with the IRS and the Department of Labor on IRS Form 5500;

12) a list or summary of all Frederickson Partners and/or  Arthur J. Gallagher & Co. welfare benefit and pension plans in which my client is enrolled; and

13) all recorded telephone calls involving Ms. Owens and/or about her claim.

61. Despite these requests, said Defendants have refused, and continues to refuse, to provide Plaintiff with the requested documents.  As such, Plaintiff is entitled to an award of penalties and other appropriate relief as set forth above.

## **FIFTH CLAIM FOR RELIEF**

**Failure To Provide Cobra Notice Against All Defendants**

**(**29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4**)**

62. Plaintiff incorporates and re-pleads by this reference the allegations of paragraphs 1 through 61, as though fully set forth herein.

63. 29 U.S.C. § 1166 provides that the employer, Plan and/or its administrators must provide notice of a loss in coverage within thirty days.

64. 29 C.F.R. § 2590.606-4 (d) provides that the employer, Plan and/or its administrators must provide notice of any termination of continuation coverage that takes effect earlier than the end of the maximum period of continuation coverage.

65. Defendants failed to provide any notice and, in fact, cancelled

coverage retroactively.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For an order declaring that that Defendants violated the terms of the Plan and the rights of Plaintiff by a) failing to pay the full amount of benefits due under the Plan; b) failing to disclose to Plaintiff and other employees that Frederickson had terminated the plan retroactively and had ceased providing payment of covered health benefits; and c) misusing and misappropriating Plan assets.

2. For an order requiring Defendants to pay all benefits due pursuant to the terms of the Plan, including without limitation a) all approved claims for which no payment has been made, and b) any interest or penalties that have been suffered by Plaintiff and other employees as a result of Defendants' failure to make timely payments;

3. For the equitable relief of surcharge, including without limitation the return of the financial benefits Defendants gained by breaching their fiduciary duties to Plaintiff and other employees and funds sufficient to make the Plan whole for the losses caused by Defendants' conduct;

4. For an order requiring that Defendants submit to an equitable accounting;

5. For disgorgement of profits gained as a result of fiduciary breaches and/or interference and other conduct described herein;

6. For the imposition of a constructive trust over all funds held by Defendants that properly constitute Plan assets;

7. For interest on all sums awarded;

8. For attorneys' fees and the costs of action in an amount the Court determines to be reasonable, pursuant to ERISA Section 502(g)(1), 29 U.S.C. §1132(g)(1), and to the extent otherwise provided by the Plan or by law;

9. Assess penalties against defendant plan administrator pursuant to 29 U.S.C. § 11329(C) and the applicable Department of Labor Regulations for each failure to timely produce documents and information; and Provide such other relief, as the Court deems equitable and just;

10. A judgment for penalties of up to $110 a day from and after May 20, 2023 until such time as the plan administrator issues a meaningful and fully compliant production of documents;

11. For an order compelling an accounting and full disclosure by Defendants of their respective practices of retroactively cancelling coverage and if similar to that exercised against Plaintiff, to appoint a special master to examine into such practices and make recommendations to this Court as will assure full and complete correction;

12. A judgment for penalties of up to $110 a day from and after October 1, 2022 until such time as the plan administrator issues a meaningful and fully compliant COBRA notice; and

13. For such other and further relief as the Court deems just and proper.

Dated: January 23, 2024

**ROBOOSTOFF & KALKIN**

By: /s/ *William Reilly*
William Reilly
Attorneys for plaintiff