UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE OWENS,<br><br>Plaintiff,<br><br>v.<br><br>BLUE SHIELD OF CALIFORNIA, et al.,<br><br>Defendants. | Case No. 24-cv-00400-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**<br><br>Re: Dkt. Nos. 15, 19, 22 |

Pending before the Court are three motions to dismiss filed by Defendants. Dkt. Nos. 15, 19, 22. The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motions to dismiss.

**I.   BACKGROUND**

Plaintiff Stephanie Owens alleges that she was employed by Defendant Valerie Fredrickson and Company ("Fredrickson") until her termination on March 12, 2020. *See* Dkt. No. 1 ("Compl.") at ¶¶ 1, 4, 25. While employed by Fredrickson, Plaintiff received health insurance benefits through The Frederickson Partners Group Health Plan (the "Frederickson Plan"), which was insured by Blue Shield of California. *See id.* at ¶¶ 2, 28. Plaintiff's health insurance benefits "ceased" on March 31, 2020. *See id.* at ¶ 4. However, Defendant California Physicians' Service dba Blue Shield of California ("Blue Shield") sent letters to Plaintiff, notifying her that she may be entitled to continued coverage under the California Continuation of Benefits Replacement Act ("Cal-COBRA"). *See id.* at ¶ 5; Dkt. No. 1-1, Ex. 1. The letter stated that "[u]nless otherwise indicated, the benefits available under this Cal-COBRA extension of coverage will be the same as the current benefits provided under the existing group health plan."

1  *See* Dkt. No. 1-1, Ex. 1 at 7.  The letters further noted that "Cal-COBRA coverage will terminate
2  should the contract between the above employer group and Blue Shield terminate[]."  *See id.* at 9.
3  Plaintiff submitted her Cal-COBRA election form to Blue Shield on April 27, 2020.  *See* Compl.
4  at ¶ 6; *see also* Dkt. No. 1-1, Ex. 1 at 13.  The form states that "I hereby elect Blue Shield of
5  California subscriber coverage," and "Blue Shield benefits, dues, and contract modifications will
6  be in accordance with the group service contract and as allowed under Cal-COBRA."  *Id.*  For the
7  next two and a half years, Plaintiff paid monthly premiums and received her Cal-COBRA benefits.
8  *See* Compl. at ¶ 7.

9        In 2022, Plaintiff was diagnosed with throat cancer and underwent treatment.  *See id.* at
10  ¶¶ 8–9.  She was prescribed a radiation treatment program, which Blue Shield preapproved by
11  letter dated December 9, 2022.  *See id.* at ¶ 9; Dkt. No. 1-2, Ex. 2.  Plaintiff's final radiation
12  treatment was in January 2023.  *See* Compl. at ¶ 10.

13        During this time and unbeknownst to Plaintiff, Frederickson was acquired by Defendant
14  Gallagher & Co. ("Gallagher") in May 2022.  *See id.* at ¶ 11.  Gallagher offered its own health
15  insurance program.  *See id.* at ¶¶ 11–12, 29.  Accordingly, in June 2022, Frederickson advised
16  Blue Shield to cancel its insurance coverage effective July 1, 2022.  *Id.* at ¶ 12.  The cancellation,
17  however, did not happen right away and took until December 2022.  *See id.* at ¶ 14.  On December
18  15, 2022, Blue Shield finally terminated Frederickson's health insurance coverage retroactive to
19  July.  *See id.*  Blue Shield notified Plaintiff via letter dated December 15, 2022, that Plaintiff's
20  coverage had been terminated retroactively.  *See id.* at ¶ 15.  The letter stated that Plaintiff's
21  "coverage has been cancelled effective 10/01/22."  *Id.*; *see also* Dkt. No. 1-3, Ex. 3.  Plaintiff did
22  not receive any advance notice of the cancellation.  *See id.* at ¶¶ 13, 18, 33, 41.  Plaintiff further
23  alleges that although Blue Shield ceased making any payments for covered claims as of October 1,
24  Blue Shield had continued to receive and deposit her premium payments.  *See id.* at ¶ 34.  Plaintiff
25  alleges that as a result, she was without coverage from December 2022 to February 2023, and
26  incurred medical bills for her cancer treatment during that time.  *Id.* at ¶¶ 19–20, 35, 37.

27        Based on these allegations, Plaintiff brings several causes of action against Frederickson,
28  Gallagher and Blue Shield under the Employee Retirement Income Security Act of 1974

1  ("ERISA"). *See id.* at ¶¶ 43–65. Defendants have each moved to dismiss the complaint. *See* Dkt.
2  Nos. 15, 19, 22.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III. DISCUSSION

Each Defendant attempts to shift responsibility, arguing that the others are ultimately responsible for the lack of notice and Plaintiff's lost coverage. This is the same tactic that Defendants allegedly employed before Plaintiff filed this case. *See* Compl. at ¶¶ 16, 17. In any event, Defendants' legal arguments overlap considerably. *First*, Defendants urge that California law—and not ERISA—governs this case. *Second*, they argue that even if ERISA does apply, Plaintiff has failed to state a claim for relief against them under the cited provisions.

### A. Application of ERISA

As an initial matter, Defendants all contend that ERISA does not apply, and all Plaintiff's

3

1  ERISA claims therefore fail, because this case involves the termination of a Cal-COBRA plan.
2  *See* Dkt. No. 15 at 4–5; Dkt. No. 19 at 4–7; Dkt. No. 22 at 5–6.  The Court notes that the parties
3  provide only a cursory analysis of this issue, which alone is reason to deny the motions.
4  Critically, Defendants offer no discussion about the nature of Cal-COBRA or the scope of ERISA.
5  Rather, Defendants' briefs are nearly identical and cite a single, non-binding district court case:
6  *Charnaux v. Health Net*, No. C 03-05875 SI, 2004 WL 2645976, at *4 (N.D. Cal. Nov. 16, 2004).
7  Defendants' reliance on *Charnaux* is misplaced.

8  In *Charnaux*, the plaintiff alleged that he had enrolled in a health insurance plan offered
9  through his employer.  *See Charnaux*, 2004 WL 2645976, at *1.  When his employment ended,
10 the plaintiff continued his health insurance plan with the defendant Health Net through a Cal-
11 COBRA continuation plan, paying his premiums directly to Health Net.  *Id.*  The plaintiff alleged
12 that Health Net had improperly terminated his policy for failing to timely pay his premiums.  *See*
13 *id.* at *1–2.  The plaintiff had initially filed state law claims against Health Net in state court.  *Id.*
14 Health Net removed the case to federal court, arguing that the state law claims were preempted
15 under ERISA.  *Id.* at *2.  The court denied the plaintiff's motion to remand, explaining in detail
16 that the "continuation" policy under Cal-COBRA was subject to ERISA.  *See Charnaux v. Health*
17 *Net*, Case No. 03-cv-05875-SI (N.D. Cal.), Dkt. No. 19 at 4–5.  The plaintiff then amended his
18 complaint to allege a single cause of action to recover benefits under ERISA § 502(a)(1)(B), 28
19 U.S.C. § 1132(a)(1)(B).  *See id.*, Dkt. No. 25.  It is this ERISA claim that the court addressed in
20 the summary judgment order cited by Defendants.  *See Charnaux*, 2004 WL 2645976, at *1; *cf.*
21 *id.* at *3 (discussing which standard of review to apply under ERISA).  Defendants fail to contend
22 with, or even acknowledge, this plainly relevant case history.[1]

23 Despite Defendants' urging, when placed in proper context, the *Charnaux* summary
24 judgment order does not compel dismissal of Plaintiff's ERISA claims here.  When addressing the
25 plaintiff's claim for benefits under ERISA, the court simply agreed with the defendant that it
26 should look to California contract law to determine whether Health Net had acted within its

---

[1] Defendant Blue Shield goes so far as to say that whether ERISA applies was never raised in *Charnaux*.  *See* Dkt. No. 31 at 3.

4

authority to terminate plaintiff's Cal-COBRA plan for nonpayment. *See Charnaux*, 2004 WL 2645976, at *4. Quoting a Ninth Circuit case, the *Charnaux* court pointed out that "ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans." *Id.* (quoting *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1501–02 (9th Cir. 1985)). "Instead, Congress intended for the courts, borrowing from state law where appropriate, and guided by the policies expressed in ERISA and other federal labor laws, to fashion a body of federal common law to govern ERISA suits." *Id.* (quoting *Scott*, 754 F.2d at 1501–02). Neither the *Charnaux* court nor the Ninth Circuit in *Scott* held that California law somehow displaces ERISA. The Court may, however, look to California law as appropriate when interpreting the terms of a health insurance plan under ERISA. But this narrow holding does not appear dispositive—or even relevant—to the pending motions to dismiss.

In short, Defendants offer no authority for their contention that ERISA does not apply to the Cal-COBRA continuation plan at issue here. Nor could they. The Ninth Circuit has distinguished between a "continuation" policy and a "conversion" policy, explaining that a continuation policy remains subject to ERISA. *See Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 875–76 (9th Cir. 2001) (citing *Qualls By & Through Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 843, n.4 (9th Cir. 1994)). Under a "continuation" policy, an individual employee elects to continue receiving health coverage under an employer's ERISA-governed plan after her employment ends by paying the premiums herself. *See id.* at 876–77; *see also Qualls*, 22 F.3d at 842, n.1. Under a "conversion" policy, however, an individual employee exercises "conversion rights" under an ERISA-governed plan to "leave[] the plan and obtain[] a new, separate, individual policy" that "is independent of the ERISA plan and does not place any burdens on the plan administrator or the plan." *See Waks*, 263 F.3d at 874–76.

In *Qualls*, as here, the plaintiff left his employment and opted for continuation coverage under his employer's ERISA health insurance plan by paying the premiums himself. 22 F.3d at 842, & n.1. The parties disputed whether this "continuation" plan was subject to ERISA. *See id.* at 842–44. The Court first held that the continuation coverage still constituted a "plan" under ERISA because it created a "complex ongoing relationship between the insureds and the insurer

5

that required constant administrative attention by the insurer." *Id.* at 843. The Court also rejected the suggestion that the continuation plan constituted a new "private policy" because it "was based solely on his previous employment." *Id.* at 843, n.4. The Court thus concluded that "[i]f the policy was governed by ERISA when [the plaintiff] was at [his employer], it continued to be governed by ERISA once he left." *Id.*

Here, Plaintiff alleges that she elected to continue receiving health insurance coverage under the Frederickson Plan when her employment ended and paid premiums directly to Blue Shield. *See* Compl. at ¶¶ 2, 4–7, 28. There appears to be no question that the Frederickson Plan was an ERISA plan governed by ERISA. *See id.* at ¶ 28. Therefore, Plaintiff's continuation plan was likewise governed by ERISA. *See Qualls*, 22 F.3d at 843, n.4. The Court **DENIES** the motions on this basis.[2]

### B. ERISA Claims

Defendants next argue, in the alternative, that even if ERISA applies, Plaintiff has failed to state an ERISA claim against them.

#### i. Denial of Benefits (Section 1132(a)(1)(B))

All three Defendants challenge the sufficiency of Plaintiff's allegations that she is entitled to benefits under the Frederickson Plan under § 1132(a)(1)(B). Section 1132(a)(1)(B) provides that a plan participant may bring a civil action "to recover benefits due to [her] under the terms of [her] plan; to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To state a claim for denial of benefits under the relevant plan, the plaintiff must allege "the existence of an ERISA plan, and identify the provisions of the plan that entitle [her] to benefits." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1213 (9th Cir. 2020) (quotation omitted). Here, Defendants' arguments sidestep the allegations in the complaint.

- *Blue Shield*. Defendant Blue Shield argues that under the Frederickson Plan, and

---

[2] Whether and to what extent Plaintiff could bring additional California claims that are not preempted by ERISA is not before the Court.

its continuation under Cal-COBRA, Defendant Frederickson had the authority to cancel the plan, which it did. *See* Dkt. No. 19 at 7–9. Defendant Blue Shield further argues that Frederickson—and not Blue Shield—had the responsibility to inform Plaintiff of the cancellation. *Id.* But accepting Plaintiff's allegations as true, as the Court must at this stage, Plaintiff contends that the plan was not properly terminated, with the consequence that Blue Shield is responsible at least in part for failing to pay for her ongoing medical treatment. Plaintiff alleges that she did not receive any advance notice, Blue Shield had pre-approved her treatment, and Blue Shield had accepted her premium payments even during the period of time the plan was purportedly cancelled. *See* Compl. at ¶¶ 7, 14–16, 21, 34, 37. Even if the Court were to consider the language of the plan, which Blue Shield attaches to its motion to dismiss, it says nothing about permitting retroactive cancellation or the continued receipt of premiums following such a cancellation.

- *Frederickson*. Defendant Frederickson urges that it had no responsibility for Plaintiff's benefits since her employment had previously terminated. *See* Dkt. No. 22 at 6–8. However, Plaintiff alleges that Defendant Frederickson was responsible for advising Blue Shield to cancel the Frederickson Plan. *See* Compl. at ¶ 12. Plaintiff further alleges that Defendant Frederickson failed to provide her proper notice of this cancellation. *See id.* at ¶¶ 13, 33. Defendant does not cite any authority that would absolve it of responsibility, particularly at the motion to dismiss stage. To the contrary, Cal-COBRA appears to require employers "to notify qualified beneficiaries currently receiving continuation coverage, whose continuation coverage will terminate under one group benefit plan . . . of the qualified beneficiary's ability to continue coverage under a new group benefit plan for the balance of the period the qualified beneficiary would have remained covered under the prior group benefit plan." *See* Cal. Health & Safety Code § 1366.25(b). Although Defendant Frederickson contends that it had no knowledge that Plaintiff

7

had elected continuation coverage, Cal-COBRA provides a mechanism by which an employer may request such information. *Id.*

- *Gallagher*. Defendant Gallagher argues that because Plaintiff was never a Gallagher employee or enrolled in a Gallagher ERISA plan, Plaintiff has no standing to sue it. *See* Dkt. No. 15 at 6–7. However, Plaintiff alleges that Defendant Frederickson was acquired by Defendant Gallagher in May 2022—months *before* her coverage was cancelled. *See* Compl. at ¶¶ 1, 11. At least as alleged, therefore, Defendant Gallagher may be directly responsible for (1) the cancellation of the Frederickson Plan and (2) the lack of notice given to Plaintiff about the cancellation and her rights to opt into a Gallagher-sponsored plan for the duration of her Cal-COBRA coverage.[3]

The Court **DENIES** the motions to dismiss Plaintiff's § 1132(a)(1)(B) claim as to any Defendant.

### i. Breach of Fiduciary Duties

#### a. Section 1132(a)(2)

Defendants argue that Plaintiff's claim for breach of fiduciary under § 1132(a)(2) should be dismissed. Section 1132(a)(2) provides that "[a] civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109(a), in turn, states that a fiduciary that breaches its duties under ERISA "shall be personally liable *to make good to such plan any losses to the plan* resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109 (emphasis added). This Section, therefore, "gives a remedy for injuries to the ERISA plan as a whole, but not for injuries

---

[3] Plaintiff suggests in her opposition brief that Defendant Gallagher could also be liable under a successor liability theory. *See* Dkt. No. 26 at 1, 8–9. However, she has not alleged this theory in the complaint and the Court thus declines the invitation to address whether it could apply.

suffered by individual participants as a result of a fiduciary breach." *Wise v. Verizon Commc'ns, Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (citing *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008)); *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985) ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."). Accordingly, "[t]o allege a fiduciary breach under § 1132(a)(2), [a plaintiff] must allege that the fiduciary injured the benefit plan or otherwise jeopardized the entire plan or put at risk plan assets." *Wise*, 600 F.3d at 1189 (quotation omitted).

Here, Defendants argue that Plaintiff is seeking to redress individual injuries and is not seeking benefits that inure to the Plan as a whole. *See* Dkt. No. 15 at 9; Dkt. No. 19 at 9–11; Dkt. No. 22 at 8–9. Plaintiff responds that she alleges that other, unidentified Plan participants suffered in the same way that she did. *See, e.g.*, Dkt. No. 27 at 11–12. Critically, however, the complaint does not allege "that the plan as a whole incurred an injury as a result" of Defendants' conduct. *See Wise*, 600 F.3d at 1189. The complaint vaguely states that "Defendants' failure to pay covered claims is ongoing, and thus the harm to Plaintiff and other Plan participants is continuing and increasing by the day." *See* Compl. at ¶ 37. But the complaint provides no factual detail to support the assertion that other Plan participants were treated similarly, or that even if they were, such mishandling caused Plan-wide injury rather than injury to individual Plan participants. The Court therefore **GRANTS** the motions to dismiss this claim.

### b. Section 1132(a)(3)

Defendants next argue that Plaintiff's claim for breach of fiduciary duty and request for equitable relief under § 1132(a)(3) should be dismissed as well. Section 1132(a)(3) provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." To establish an action for equitable relief under § 1132(a)(3), "the defendant must be an ERISA fiduciary acting in its fiduciary capacity,

9

and must violate [ ] ERISA–imposed fiduciary obligations." *See Mathews v. Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004) (quotation omitted) (original brackets).

Defendants largely take issue with the accuracy of Plaintiff's allegations, which is improper at the motion to dismiss stage. *See* Dkt. No. 15 at 7–8; Dkt. No. 19 at 11–12; Dkt. No. 22 at 10–11. Plaintiff alleges that Defendant Frederickson, as the sponsor of the Frederickson Plan, was the Plan Administrator and therefore a fiduciary for purposes of ERISA. *See* Compl. at ¶¶ 26, 47. Likewise, however inartfully pled, Plaintiff alleges that Defendant Gallagher became a Plan Administrator and fiduciary after it acquired Defendant Frederickson in May 2022. *See id.* at ¶¶ 1, 11, 27, 47. And Plaintiff alleges that Defendant Blue Shield was a fiduciary because it was "responsible for making and did make discretionary decisions regarding, among other things, Plan administration, and the disbursement of Plan benefits and Plan assets . . . and exercised control over Plan assets." *Id.* at ¶ 47. As discussed in Section III.B.i above, Plaintiff has also alleged that they each breached their fiduciary duties by retroactively terminating her coverage and failing to provide prior notice. Contrary to Defendants' suggestion, Plaintiff is not challenging "the decision to terminate, but rather the *implementation* of the decision" to terminate the Plan. *See Waller v. Blue Cross of California*, 32 F.3d 1337, 1342 (9th Cir. 1994) (emphasis in original).

Still, part of the difficulty in parsing this claim is that Plaintiff gestures to the rest of her complaint for support and only alludes to the equitable relief that she is seeking. In the complaint, she generically states that she "is entitled to appropriate equitable relief to ensure the protection of her rights going forward and prevent unjust enrichment of Defendants . . . ." *See* Compl. at ¶ 55. But it is not clear how this is distinct from her claim under § 1132(a)(1)(B) for unpaid medical bills. In her opposition briefs, Plaintiff suggests that she may be seeking "surcharge damages" or some other alternative relief based on prohibited transactions under 29 U.S.C. § 1106(a). *See, e.g.*, Dkt. No. 27 at 12–14; Compl. at ¶¶ 49, 56. But she does not explain those theories either. Neither the Court nor Defendants should have to guess as to the nature of her claim or the relief sought. The Court therefore **GRANTS** the motions to dismiss on this basis.[4]

---

[4] Because the Court has granted the motions to dismiss Plaintiff's fiduciary duty claims, the Court similarly grants the motions as to the derivative claim for co-fiduciary liability under 29 U.S.C.

**ii.   Penalties (29 U.S.C. §§ 1132(a)(1)(A), 1132(c))**

Next, Defendants urge that the Court must dismiss Plaintiff's claim for penalties under § 1132(a)(1)(A) for failing to provide the requested Plan documents. The parties appear to agree that only a plan administrator may be held liable for failing to comply with reporting and disclosure requirements. *Compare* Dkt. No. 19 at 12, *with* Dkt. No. 27 at 14–15.

- *Blue Shield.* Defendant Blue Shield argues that Defendant Frederickson is the plan administrator, so Blue Shield cannot be held liable. Dkt. No. 19 at 12. Plaintiff appears to concede that she does not know whether Blue Shield is a plan administrator, but suggests that Defendants cannot "benefit" from intentionally keeping her in the dark. *See* Dkt. No. 27 at 14–15. Plaintiff, however, fails to offer any support for her bare conclusion that Defendant Blue Shield is a plan administrator under these circumstances, and doing so is counsel's Rule 11 obligation when filing a complaint. The Court therefore **GRANTS** the motion as to this claim against Defendant Blue Shield.

- *Frederickson.* Defendant Frederickson again argues that ERISA does not apply here. *See* Dkt. No. 22 at 12. The Court has already rejected this argument in Section III.A above, and accordingly **DENIES** the motion on this basis.

- *Gallagher.* Defendant Gallagher argues that there is no support for the contention that it is affiliated with the Frederickson Plan or otherwise acted as a plan administrator. *See* Dkt. No. 15 at 9. Defendant Gallagher asserts that any "coverage is exclusively the responsibility of Frederickson and provided under the Fredrickson Plan." *See* Dkt. No. 29 at 11. However, this ignores Plaintiff's allegations that Defendant Gallagher acquired Defendant Frederickson in May

---

§ 1105.

11

2022 before the Plan was terminated.  *See* Compl. at ¶ 11.  Defendant Gallagher may of course challenge Plaintiff's allegations—and this claim—on summary judgment.  At this stage, however, the Court does not address any of the many factual disputes raised by the parties.

The Court therefore **GRANTS** the motion to dismiss Plaintiff's claim under § 1132(a)(1)(A) as to Defendant Blue Shield but **DENIES** the motions as to Defendants Frederickson and Gallagher.

### iii. Notice of Federal COBRA (29 U.S.C. § 1166)

Lastly, Defendants argue that Plaintiff's claim that they failed to provide adequate notice fails under § 1166 because Plaintiff has alleged that she elected Cal-COBRA coverage and California law applies.  *See, e.g.*, Dkt. No. 19 at 12–13; Compl. at ¶¶ 6–7.  But the Court has already explained that ERISA still applies to the Cal-COBRA continuation plan.  *See* Section III.A above.  To the extent Defendants suggest that any notice requirements under federal COBRA cannot apply once a plaintiff elects Cal-COBRA coverage, they have not provided any authority for this argument.  The Court therefore **DENIES** the motions on this basis.

## IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** the motions to dismiss.  Dkt. Nos. 15, 19, 22.  The Court **GRANTS** the motion to dismiss as to Plaintiff's claims under §§ 1132(a)(2), (a)(3), and 1105 as to all three Defendants; **GRANTS** the motion to dismiss the claim under § 1132(a)(1)(A) as to Defendant Blue Shield; but otherwise **DENIES** the motions to dismiss.

At this stage in the litigation, the Court cannot say that amendment would be futile.  Plaintiff may therefore file an amended complaint within 21 days of the date of this order provided counsel can do so consistent with their Rule 11 obligations.  Any amended complaint may not add any new parties or claims.  The Court further **SETS** case a case management conference on May 13, 2025, at 2:00 p.m.  The hearing will be held by Public Zoom Webinar.  All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  The parties are further **DIRECTED** to file a joint case

management statement by May 6, 2025.

**IT IS SO ORDERED.**

Dated:  3/20/2025

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

13